IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION


**JAMES WARREN HOLLAND,**

    **Plaintiff,**

vs.                                                    CASE NO. 5:03CV323-SPM/AK

**DR. EFLONG ANDEM,**

    **Defendant.**

_____/


## REPORT AND RECOMMENDATION

Plaintiff brings this cause pursuant to 42 U.S.C. §1983 alleging that the Defendant Dr. Eflong Andem was deliberately indifferent to his medical needs. (Doc. 18). Defendant has moved for summary judgment (doc. 38) and to dismiss certain claims. (Doc. 36). Plaintiff has responded. (Docs. 39 and 42).

**I.    Allegations of the Amended Complaint (doc. 18)**

Plaintiff has alleged two distinct claims against Defendant Andem: one concerns his feet, and the second concerns treatment for hepatitis C. (Doc. 18, p. 7, 7a through 7d).

As to the first claim, Plaintiff claims that he was issued a pass or prescription for special type shoes by a foot specialist, Dr. Richard Varrone, at North Florida Reception Center, which Defendant allegedly ignored when Plaintiff was transferred to Holmes Correctional Institution on June 2, 2003.  Plaintiff claims that he was forced to wear boots and work in the kitchen, which aggravated his foot problems causing him to report to medical for treatment he then had to pay for.

As to the second claim, Plaintiff alleges that he has severe side effects from the treatment for hepatitis C and Defendant Andem has refused to treat him for these conditions, which include sores and spots on his body and face, fever and chills, headaches, fatigue, rashes, weight loss, hair loss, joint pain, irritability, depression, personality changes, nausea, itching, dizziness, nose bleeds, and cloudy, odorous urine.

Attachments to the amended complaint show that Plaintiff signed a receipt for special shoes on March 27, 2003, which he purportedly wore out of the clinic.  (Doc. 18, Exhibit A1).  He also received a Health Pass dated June 16, 2003 through September 27, 2003, for special shoes, which is stamped by Defendant Andem.  (Exhibit A2).

Grievances attached to the complaint show that he grieved the special shoes issue to the warden at Holmes Correctional Institution on September 4, 2003, and the response was that "[n]umerous examinations of your feet and ankles reveal no approved medical condition which requires special shoes."  The response is provided by Defendant Andem and the Assistant Warden.  (Exhibit B).  Plaintiff appealed this to the Secretary, who responded that Dr. Andem was contacted and advised that his

**No. 5:03cv323-spm/ak**

examination did not reveal a need for special shoes. (Exhibit D). Another grievance was filed on September 19, 2003, concerning the shoes (exhibit F), which was again denied because his medical condition was not deemed to require special shoes by the Chief Health Officer. (Exhibit G). Plaintiff requested a refund for the sick calls he made as a result of his foot problems, and these requests were denied. (Exhibits I and J).

Plaintiff also filed three Inmate Requests regarding the interferon treatment for hepatitis. One dated November 14, 2003, was not treated as a grievance since Plaintiff requests to talk to someone about his side effects, which he claims Defendant Andem is ignoring. A note on the request indicates that Plaintiff was seen on November 24, 2003. Another request dated January 15, 2004, requests another set of thermal underwear because he stays chilled as a result of the interferon treatment, and it, too, does not appear to be treated as a grievance. The response notation is "need to see medical pass." (Exhibit L). Finally, an Inmate Request marked "Informal Grievance," concerns his need for thermal underwear because of the interferon treatment and says that Dr. Andem told him it was a security issue. The response is that the record will be referred to Dr. Andem, and the grievance was denied.

**II.    Defendant's Motion to Dismiss for Failure to Exhaust (doc. 36)**

Defendant moves to dismiss Plaintiff's claim regarding a denial of treatment for the side effects of his treatment for hepatitis C because he failed to fully exhaust the grievance process with regard to this claim. Defendant has correctly cited the applicable law in this circuit, which holds that exhaustion is mandatory. Alexander v. Hawk, 159 F.3d 1321, 1324-26 (11th Cir. 1998). There is no discretion to waive this

**No. 5:03cv323-spm/ak**

requirement or provide continuances of prisoner litigation in the event that a claim has not been exhausted prior to filing. Alexander, 159 F.3d at 1325; *see also* Porter v. Nussle, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002) (holding that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."); Higginbottom v. Carter, 223 F.3d 1259, 1260-61 (11th Cir. 2000) (holding that an excessive force claim is subject to the exhaustion requirement); Brown v. Sikes, 212 F.3d 1205, 1207-08 (11th Cir. 2000) (finding that an inmate must "provide with his grievance all relevant information reasonably available to him" but he cannot be required to name individuals responsible for challenged conduct when he could not yet identify those persons). Furthermore, this Court may not consider the adequacy or futility of administrative remedies, but only the availability of such. Higginbottom, 223 F.3d at 1261, *citing* Alexander, 159 F.3d at 1323. An inmate must not only commence the grievance process, he must perfect his appeal to the highest administrative level in the process. Alexander, 159 F.3d at 1323.

From the grievances attached to Plaintiff's amended complaint, it is clear that Plaintiff did not complete the grievance process with regard to this claim. He filed three Inmate Requests only one of which was clearly marked as an "Informal Grievance." Even if all three of the requests could be construed as grievances, Plaintiff failed to appeal any of them. Further, the requests do not fully encompass the claims Plaintiff asserts against Defendant Andem in his complaint. In the request dated November 14, 2003, Plaintiff requests to talk to someone about his side effects because Dr. Andem

**No. 5:03cv323-spm/ak**

was ignoring them, but the other requests dated January 15, 2004, and January 28, 2004, concern thermal underwear because he stays chilled as a result of the interferon treatment. None of the requests raise the seriousness or comprehensiveness of the issues raised in the complaint, and as stated supra none of the requests/grievances were appealed. Consequently, it is the opinion of the undersigned that the motion to dismiss the claim regarding treatment for hepatitis C or lack thereof should be granted, and this claim dismissed for failure to exhaust administrative remedies.

### III.  Summary Judgment Standard

A district court should grant summary judgment when, "after an adequate time for discovery, a party fails to make a showing sufficient to establish the existence of an essential element of that party's case." Nolen v. Boca Raton Community Hospital, Inc., 373 F.3d 1151, 1154 (11th Cr. 2004), *citing* Celotex Corporation v. Catrett, 477 U.S. 317, 322 (1986). All issues of material fact should be resolved in favor of the Plaintiff or non-moving party before the Court determines the legal question of whether the defendant is entitled to judgment as a matter of law under that version of the facts. Durruthy v. Pastor, 351 F.3d 1080, 1084 (11th Cir. 2003); Skrtich v. Thornton, 280 F.3d 1295, 1299 (11th Cir. 2002). The Plaintiff has the burden to come forward with evidentiary material demonstrating a genuine issue of fact for trial. Celotex, 477 U.S. at 322-23. Plaintiff must show more than the existence of a "metaphysical doubt" regarding the material facts, Matsushita Electric Industrial Co., LTD. v. Zenith Radio Corporation, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986), and a "scintilla" of evidence is insufficient. There must be such evidence that a jury could reasonably return a verdict

**No. 5:03cv323-spm/ak**

for the party bearing the burden of proof.  Anderson v. Liberty Lobby, 477 U.S. 242, 251, 106 S. Ct. 2505, 2512, 91 L. Ed. 2d 202 (1986).  "For factual issues to be considered genuine, they must have a real basis in the record."  Mize v. Jefferson City Board of Education, 93 F.3d 739, 742 (11th Cir. 1996).

"Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by his own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " Owen v. Wille, 117 F.3d 1235, 1236 (11th Cir. 1997), *cert. denied* 522 U.S. 1126 (1998), *quoting* Celotex, 477 U.S. at 324, 106 S. Ct. at 2553 (quoting Fed. R. Civ. P. 56(c), (e)).  The nonmoving party need not produce evidence in a form that would be admissible as Rule 56(e) permits opposition to a summary judgment motion by any of the kinds of evidentiary materials listed in Rule 56(c).  Owen v. Wille, 117 F.3d at 1236; Celotex, 477 U.S. at 324, 106 S. Ct. at 2553.

While a moving party is not required to support his motion for summary judgment with affidavits, Celotex, supra at 323, the facts stated in uncontradicted affidavits or other evidentiary materials must be accepted as true for purposes of summary judgment.  Gauck v. Meleski, 346 F.2d 433, 436 (5th Cir. 1965).

**III.    Defendant's Rule 56(e) evidence**

    a)    Affidavit of Dr. Daryl Makoff (Doc. 35 Exhibit B)

Dr. Makoff is a podiatrist who has worked as a special consultant to the Department of Corrections for fifteen years.  He examined Plaintiff at North Florida Reception Center on February 14, 2003, and found him to have Hallux Valgus or

**No. 5:03cv323-spm/ak**

bunions, characterized by a lump on the inside of the foot around the big toe joint. He also diagnosed flat feet. He suggested that Plaintiff be issued soft, wide, supportive type running shoes for comfort. He adds that If the shoes work to relieve the pain, then no other treatment is warranted for this condition. His report is attached to his affidavit and supports the statements made therein.

      b)    <u>Consultant's Report dated March 27, 2003 (Exhibit C)</u>

This report, signed by Richard Varrone, shows that Plaintiff was fitted with new, athletic type shoes Saucony brand style #996-8 size 13EE. He was also fitted with metatarsal pads, and he wore the shoes out of the clinic. Plaintiff also signed a receipt for the shoes on this date.

      c)    <u>Affidavit of Defendant Eflong Andem (Exhibit F)</u>

Dr. Andem is a physician employed by DOC for ten years as Chief Health Officer at Holmes Correctional Institution. He is familiar with the Plaintiff and has examined him with regard to his feet. Defendant Andem attests that he has examined Plaintiff numerous times and has attached medical records to support this.

On June 2, 2003, Plaintiff was transferred to Holmes Correctional Institution and on June 13, 2003, declared a medical emergency on the grounds that he had been issued boots and was required to do kitchen work resulting in swollen, painful feet. He was counseled not to abuse the medical emergency request and told to report to sick call. His feet were slightly swollen and appeared to be "deformed." On June 16, 2003, he appeared for sick call with swollen feet and his chart was referred to Defendant who issued him a pass for special shoes effective June 16, 2003, through September 27,

**No. 5:03cv323-spm/ak**

2003. Plaintiff was examined by Defendant on July 3, 2003, and again on September 4, 2003, and at the September examination Defendant Andem determined not to renew Plaintiff's shoe pass when it expired on September 27, 2003. Defendant Andem also examined Plaintiff for various other complaints, as did other medical personnel, and none of the entries include notations of complaints about his feet or observations of swollen or inflamed feet. On March 21, 2005, when Plaintiff specifically requested a pass for special shoes, his feet were examined and he had no callouses, his bunions were not prominent or swollen or inflamed, and it was determined that special shoes were not necessary.

      d)    <u>Affidavit of Sherrie Harris (Exhibit H)</u>

Ms. Harris is the Property and Clothing Officer at Holmes and is responsible for keeping an inventory of inmate clothing. She attests that Plaintiff has one pair of special shoes, black tennis shoes, and he is permitted to wear these every day to work. Other than shower shoes, he has no other shoes issued to him at this time.

      e)    <u>Affidavit of Dr. Daniel P. Cherry (Exhibit I)</u>

Dr. Cherry is Director of Health Services whose job it is to oversee the delivery of health services to all DOC inmates. He has been employed by DOC for fourteen years. He has reviewed the medical records in the file, the amended complaint filed in this case, and is of the opinion that Plaintiff received medical care exceeding the prevailing professional standards.

**No. 5:03cv323-spm/ak**

Case 5:03-cv-00323-SPM-AK   Document 49   Filed 12/02/05   Page 9 of 13

Page 9 of 13

### IV.     Plaintiff's Opposition (Docs. 39 and 42)

Plaintiff argues that Defendant Andem should have reissued a soft shoe pass because his current shoes are worn out. Plaintiff adds that when he was first examined he was forced to wear work boots, but concedes that his soft shoes are now the only ones he has. Plaintiff claims that he was re-assigned from food services to house man because he has no pass for soft shoes and is unable to wear hard shoes. He argues that he still suffers from pain and has continued to complain about the pain in his feet, but the Defendant insists there is nothing wrong.

In his amendment to his response (doc. 42), Plaintiff states that he was transferred to Baker Correctional Institution on August 5, 2005, and has been issued a pass for special shoes. He has attached to this amended response a Health Pass for special shoes effective from August 8, 2005, to August 8, 2006.

### V.     Analysis

Medical claims under the Eighth Amendment have an objective and subjective component, each of which additionally is considered to encompass two subsidiary requirements. Taylor v. Adams, 221 F.3d 1254, 1258 (11th Cir. 2000), cert. denied, 531 U.S. 1077, 121 S.Ct. 774, 147 L.Ed.2d 673 (2001). The "objective component" of the Eighth Amendment standard requires a determination whether the alleged wrongdoing was objectively harmful enough to establish a constitutional violation. See Wilson v. Seiter, 501 U.S. 294, 303, 111 S.Ct. 2321, 2326, 115 L.Ed.2d 271 (1991). This objective component varies with the situation and the conduct in question and is responsive to "contemporary standards of decency." Estelle v. Gamble, 429 U.S. 97,

**No. 5:03cv323-spm/ak**

103, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976); see also Rhodes v. Chapman, 452 U.S. 337, 346, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981).  An objectively serious deprivation requires (1) showing an objectively "serious medical need." Estelle, 429 U.S. at 104.  A serious medical need is one that, if left unattended, "pos[es] a substantial risk of serious harm." Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970, 1977, 128 L.Ed.2d 811 (1994).  In addition, an objectively serious deprivation requires (2) showing the response made by the defendant to that need was so deficient as to constitute "an unnecessary and wanton infliction of pain" and not simply "negligen[ce] in diagnosi[s] or treat[ment]," or even "[m]edical malpractice" actionable under state law. Estelle, 429 U.S. at 105-06 (internal quotation marks omitted). See Taylor, 221 F.3d at 1257; see also Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003).

     A serious medical need is considered "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Farrow, at 1243, quoting Hill v. Dekalb Regional Youth Detention Center, 40 F.3d 1176, 1187 (11th Cir. 1994).

     To show the required subjective intent to punish the plaintiff must demonstrate that the defendant acted with an attitude of "deliberate indifference." Estelle, 429 U.S. at 105.  This is defined as requiring (1) an "aware[ness] of facts from which the inference could be drawn that a substantial risk of serious harm exists" and (2) the actual "draw[ing of] the inference." Farmer, 511 U.S. at 837.  In sum, in a claim of denial of medical attention under the Eighth Amendment "[u]ltimately, there are [] four requirements: an objectively serious need, an objectively insufficient response to that

**No. 5:03cv323-spm/ak**

need, subjective awareness of facts signaling the need, and an actual inference of required action from those facts." Taylor, 221 F.3d at 1258.

To summarize the facts before the Court, Plaintiff was issued soft shoes at North Florida Reception Center because of his bunions. When he was transferred to Holmes Correctional Institution he was assigned kitchen duty and issued work boots because such work requires hard shoes. He declared a medical emergency on his first day at work, was examined a few days later, and a special shoe pass was issued. Upon re-examination by Defendant Andem his feet had improved and the shoe pass was not renewed, but the soft shoes were not confiscated and indeed he continued to wear them to work and elsewhere because according to the clothing inventory he had no other footwear. Thus, the facts are that even without renewal of the shoe pass, Plaintiff was allowed to wear soft shoes, and other than the one day he was forced to wear work boots, he has not had to wear hard footwear since that time. According to Dr. Makoff, a podiatrist, the only treatment for Plaintiff's type of foot condition would be wearing soft, athletic type shoes, unless his condition worsened to the point of needing surgery.

He complains in his response that he could not work as anything but a houseman because of his soft shoes, but this complaint is not a claim before the Court. Plaintiff also complains that he has had continued foot pain, which Defendant Andem has not treated, but these claims are also not before the Court, nor have they been exhausted in the grievance process. What Plaintiff complains of in the amended complaint is that Defendant Andem ignored the recommendations of the specialist with regard to the issuance of special shoes, and the facts do not support this claim. According to the

**No. 5:03cv323-spm/ak**

affidavits and supporting medical records, Plaintiff came to Holmes CI with soft shoes, as recommended by a specialist at North Florida Reception Center. He was assigned kitchen duty and placed in hard shoes, but when his condition came to the attention of Defendant Andem a few days later, Defendant issued Plaintiff a shoe pass, which he held for several months. Thus, Defendant Andem did not ignore the recommendations of the specialist, and upon examination of Plaintiff's swollen feet issued a soft shoe pass immediately. When Defendant Andem examined Plaintiff several months later after he had been wearing the soft shoes, he found the condition improved and determined not to reissue the shoe pass. However, there is no evidence nor does Plaintiff contend that the shoes were confiscated or that he was ever forced to wear hard shoes after Defendant Andem's initial examination in June of 2003. In fact, the medical records establish that Plaintiff was seen repeatedly by various medical staff and did not voice complaints about a continuing foot problem until months later, when he apparently wanted new shoes.

Further, Defendant Andem has the medical opinion that his problems have improved. Plaintiff disagrees with this assessment and insists that more should be done. His disagreement with the medical opinions of the Defendant do not state a claim of deliberate indifference constituting cruel and unusual punishment. Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991) (differences in opinion between medical staff and inmate do not state Eighth Amendment claim).

In light of the foregoing, it is respectfully **RECOMMENDED** that Defendant's Motion to Dismiss (doc. 36) be **GRANTED**, and Plaintiff's claim concerning his

**No. 5:03cv323-spm/ak**

treatment for hepatitis C be **DISMISSED** for failure to exhaust administrative remedies. It is further **RECOMMENDED** that Defendant's Motion for Summary Judgment (doc. 38) be **GRANTED**, and the remaining claims raised in Plaintiff's amended complaint (doc.18) be **DISMISSED** for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2), and that the order adopting this report and recommendation direct the clerk of court to note on the docket that this cause was dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

**IN CHAMBERS** at Gainesville, Florida, this **2nd** day of December, 2005.

s/ A. KORNBLUM
**ALLAN KORNBLUM**
**UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**

**No. 5:03cv323-spm/ak**